**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

GIUSEPPE D'ARRO and MARIA )
D'ARRO, husband and wife, )
                                       )
      Plaintiffs, )
                                         )
        v. )      C.A. No. N21C-01-142 CLS
                                         )
CHRISTOPHER L. MORKIDES, )
                                         )
      Defendant. )
                                         )
                                         )

Date Submitted: January 14, 2022
Date Decided: March 9, 2022

*Upon Defendant's Motion in Limine to Exclude Opinions of Plaintiff's Expert.*
**GRANTED.**

## <u>ORDER</u>

Michael I. Silverman, Esquire, Silverman, McDonald & Friedman, Wilmington, Delaware, 19805, Attorney for Plaintiffs, Giuseppe and Maria D'Arro.

Paul D. Sunshine, Esquire, Reger Rizzo & Darnall LLP, Wilmington, Delaware, 19803, Attorney for Defendant, Christopher L. Morkides.

**SCOTT, J.**

1

## INTRODUCTION

Before the Court is Defendant Christopher L. Morkides's ("Mr. Morkides") Motion *in Limine* to Exclude the Neurological Opinions of Plaintiffs Giuseppe and Maria D'Arro's ("Mr. and Mrs. D'Arro") Medical Expert. The Court reviewed the parties' submissions. For the reasons that follow, the Defendant's Motion *in Limine* is **GRANTED.**

## FACTS

This suit stems from head-on car accident from February 1, 2019, where Mr. Morkides allegedly struck Mr. and Mrs. D'Arro. Mr. D'Arro suffered injury causing him to seek medical care.

Mr. and Mrs. D'Arro identified Dr. Mark Eskander ("Dr. Eskander") as their expert witness for Mr. D'Arro's injuries. Dr. Eskander has been licensed to practice medicine since 2012 and is a Board-Certified orthopedic surgeon. He is currently and has actively practiced medicine specializing in spinal care, and regularly treats patients.

Mr. Morkides seeks to exclude Dr. Eskander's opinions relating to the concussion because Dr. Eskander fails to provide a factual basis, as required by Daubert, for his opinions regarding the traumatic brain injury suffered. Additionally, Mr. Morkides argues Dr. Eskander acts as a "conduit to hearsay" when relying on the opinions of Dr. Bley and Dr. Voltz in diagnosing the brain injury. Mr. Morkides

also makes the argument the expert report should be excluded in its entirety because the report was not received until six weeks after the deadline for providing expert reports.

Mr. Morkides takes issue with Dr. Eskander's findings related to Mr. D'Arro neurological findings. According to Dr. Eskander's report, "Mr. D'Arro underwent treatment with Dr. Bradley Bley and Dr. Matthew Voltz for concussion and post-concussion syndrome. Records indicate that the patient continues to experience symptoms of headaches, nausea, fatigue, difficulties with his memory and balance, dizziness and confusion. MRI imagining of the brain was completed and was negative for acute intracranial abnormality." Additionally, "In relation to the patient's concussion and postconcussive syndrome, physical therapy has been recommended with an emphasis on vestibular training secondary to numerous falls. It is my opinion that all treatment related to the head injury is reasonable, necessary, and causally related to the motor vehicle collision. It is likely that the patient's ongoing deficits related to his postconcussive syndrome have contributed to his likely need for assisted living."

Mr. and Mrs. D'Arro argue Dr. Eskander's neurological testimony is admissible because he treats patients who suffer from a variety of injuries, including closed head trauma. They further present Dr. Eskander regularly works with head

and brain trauma specialists at his office, and he responsibly relied on the medical records of Dr. Bley and Dr. Voltz to form his opinions.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Delaware Rule of Evidence 702 which provides:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skills, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[1]

The federal standard is identical to the Delaware standard which was interpreted by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc.,[2] and Kumho Tire Co., Ltd. v. Carmichael.[3] In Kumho Tire, the Supreme Court extended the holdings in Daubert to encompass all expert testimony including, "scientific, technical or other specialized" knowledge.[4]

The holdings in Daubert and Kumho have been adopted by the Delaware Supreme Court as "correct interpretations" of D.R.E. 702.[5] "The inquiry envisioned

---

[1] D.R.E. 702.
[2] 509 U.S. 579 (1993).
[3] 526 U.S. 137 (1999).
[4] 526 U.S. at 141.
[5] *M.G. Bankcorporation, Inc. v. LeBeau*, 737 A.2d 513, 522 (Del.1999).

4

by Rule 702 is, we emphasize, a flexible one ... [t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."[6]

Daubert held that the trial judge must act as a "gatekeeper" and determine whether the proffered expert testimony is both relevant and reliable.[7] Several factors are considered in this determination, but they are not viewed as a "definitive checklist or test."[8] Those factors are:

(1) whether a theory of technique has been tested;
(2) whether it has been subjected to peer review and publication;
(3) whether a technique had a high known or potential rate of error and whether there are standards controlling its operation; and
(4) whether the theory or technique enjoys general acceptance within a relevant scientific community.[9]

In addition to the Daubert factors, the trial court must determine the admissibility of an expert witness using a "five-step test:"

1. The witness is qualified (D.R.E.702);
2. The evidence is otherwise admissible, relevant, and reliable (D.R.E. 401 and 402);
3. The bases for the opinion are those reasonably relied upon by experts in the field (D.R.E.703);
4. The specialized knowledge being offered will assist the trier of fact to understand the evidence or determine a fact in issue (D.R .E.702); and

---

[6] *Daubert*, 509 U.S. at 594.
[7] *Id.*
[8] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 794 (Del.2006).
[9] *Daubert*, 509 U.S. at 592–93.

5. The evidence does not create unfair prejudice, confuse the issues, or mislead the jury (D.R.E.403).[10]

The focus of the Daubert analysis concerns the principles and methodology used to form the expert's opinion and not on the resulting conclusions.[11] The party seeking to introduce the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.[12]

## DISCUSSION

In applying the "five-step test" to Dr. Eskander's testimony, the Court finds the Mr. and Mrs. D'Arro did not established the admissibility of his testimony by a preponderance of the evidence.

First, an expert witness is qualified to testify through any of the following: knowledge, skill, experience, training or education.[13] Mr. Morkides does raise an argument regarding Dr. Eskander's qualifications to give neurological diagnoses in his motion. Thus, the Court must analyze whether Dr. Eskander is qualified to render such neurological opinions. Dr. Eskander has nine years of experiencing practicing medicine and is an orthopedic surgeon whose expertise is the spine. Mr. Morkides contends neurological conclusions are outside of Dr. Eskander's field of expertise.

---

[10] *Nelson v. State*, 628 A.2d 69, 74 (Del.1993).
[11] *Daubert*, 509 U.S. at 594.
[12] *Bowen*, 906 A.2d at 794–95.
[13] D.R.E. 702.

While the Court understands Dr. Eskander's specialty is orthopedics, this Court cannot conclude his specialty makes him qualified to give neurological opinions, even with his affidavit he received training and has experience treating patients who suffered from head and brain injuries, including closed head injuries.

The Court also takes issue with Dr. Eskander's opinions being admissible, relevant, and reliable due to his lack of methodology. Even if Dr. Eskander was qualified to testify to neurological opinions, his statements alone, without providing methodology, will not be sufficient to admit the opinion.[14] Here, in Dr. Eskander's report, he concludes Mr. D'Arro suffers from concussion and post-concussive syndrome without explaining nor conducting any neurological testing, which would be necessary to make any conclusions about the lasting effect of such injuries to a reasonable degree of medical probability.

Mr. Morkidies contends Dr. Eskander's findings related to Mr. D'Arro's concussion and post-concussion syndrome act as a conduit to hearsay. This Court agrees. Delaware case law provides that experts may rely on hearsay while forming their opinions, as long as that hearsay evidence is reasonably relied upon by experts in the field.[15] But, experts are not to serve as a "conduit" for otherwise inadmissible

---

[14] *Jones v. Astrazeneca, LP*, 2010 WL 1267114, at *9 (Del. Super. Ct. Mar. 31, 2010).

[15] See *Brandt v. Rokeby Realty Co.*, 2005 WL 16543621, at *4 (Del. Super. Ct. May 9, 2005) (finding expert's reliance on inadmissible hearsay evidence is limited

hearsay statements. "An expert may not, however, rely on hearsay evidence alone to substantively prove the truth of his statement or opinion. If the expert is merely acting as a mouthpiece or conduit for another's opinions or statements, he cannot be said to be acting in his capacity as an expert in the matter and the hearsay evidence is inadmissible." The opinions Dr. Eskander presents are opinions of his colleagues, Dr. Bley and Dr. Voltz, who presumable performed neurological testing on Dr. D'Arro to come to the conclusions Dr. Eskander presents. While reliance on the opinions of professional in forming Dr. Eskander's opinion falls withing Delaware Rule of Evidence 703's parameters.[16] Mr. and Mrs. D'Arro fail to show Dr. Eskander's reliance on such communication renders Dr. Eskander little more than a mouthpiece for the conclusions of his colleagues.

Additionally, the Court recognizes allowance of Dr. Eskander's expert testimony related to Mr. D'Arro's neurological condition would prejudice Mr. Morkides as he would be unable to effectively cross-examine Dr. Eskander on his opinions as they are the opinions of his colleagues.

---

by Rule 703's requirement that it also be reasonably relied upon by others in the field).

[16] D.R.E. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

Because the Court finds Dr. Eskander, with regard to Mr. D'Arro's neurological condition, is not qualified as an expert, his opinions and conclusions lack methodology making them unreliable, his testimony acts as a conduit to hearsay and Mr. Morkides would be significantly prejudiced by the testimony, Dr. Eskander may not testify to Mr. D'Arro's neurological condition.

## CONCLUSION

Based on the forgoing reasons, Defendants' Motion *in Limine* to exclude opinions of Plaintiff's expert is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Calvin L. Scott
**Judge Calvin L. Scott, Jr.**